UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE SIZEMORE, ELSIE CONDE, and BROOKE JOHNSON, on behalf of themselves and all others similarly situated, | Case No.: 6:26-cv-6361 |
| Plaintiffs, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CALVADO CARE LLC, and ELM MANOR NURSING & REHABILITATION CENTER, | |
| Defendants. | |

Plaintiffs Nicole Sizemore ("Sizemore"), Elsie Conde ("Conde"), and Brooke Johnson ("Johnson") (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated persons, by and through their undersigned counsel, allege upon personal knowledge as to themselves and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facilities, review of Defendants' records, conversations with Defendants' employees and investigation of their counsel), as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former non-exempt hourly employees ("Hourly Employees") of Calvado Care LLC ("Calvado Care") and Elm Manor Nursing & Rehabilitation Center ("Elm Manor") (collectively, "Defendants"), seeking redress for unpaid wages resulting from Defendants' systematic and uniform unlawful pay practices and policies.  More specifically, Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former Hourly Employees who worked for Defendants at one or more of the following facilities: Elm Manor, The Brook at High

4905-0005-2635, v. 1                                  1

Falls Nursing and Rehabilitation, and Wedgewood Rehab and Nursing Center (collectively, the "Facilities").

2.    Defendants operate nursing and rehabilitation centers in Canandaigua and Rochester, New York, offering a wide spectrum of rehabilitation services, including physical therapy, occupational therapy, and speech therapy.  Defendants employ more than 100 current Hourly Employees at the Facilities, including, among others, nurses, aides, certified nursing assistants, maintenance employees, and administrative staff. Defendants, by virtue of their management and control over the wages and work of Plaintiffs and the Hourly Employees, are classified as "employers" under applicable labor law.

3.    As particularized below, Defendants have engaged in illegal and improper wage practices and policies that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.  These practices include: (a) improperly manipulating Hourly Employees' time punches to artificially reduce the amount of time Hourly Employees are credited with performing work; (b) penalizing Hourly Employees by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing work and/or compensating Hourly Employees solely based on their scheduled hours rather than all hours worked; and (c) automatically deducting time for meal breaks when Hourly Employees are performing work during that time.   These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

4.    Furthermore, Defendants failed to provide Plaintiffs and Hourly Employees with appropriate and accurate pay rate acknowledgement forms and weekly wage statements. As a result, Plaintiffs and the Hourly Employees were prejudiced and harmed in their ability to ascertain whether they were, in fact, compensated for all hours worked and at the appropriate rate of pay,

4905-0005-2635, v. 1

resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants.

5.　　For these reasons, Plaintiff brings this action on behalf of herself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

6.　　This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

7.　　This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

8.　　This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

9.　　Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

### Plaintiffs

10.     Plaintiff Sizemore is currently a resident of Springwater, New York, and is a former Hourly Employee of Defendants.  Sizemore was employed by Defendants as a Certified Nursing Assistant ("CAN") at the Elm Manor facility from January 13, 2025 to January 27, 2026.

11.     Sizemore's job responsibilities as a CNA included, among other things, providing direct and hands-on healthcare services to patients at Defendants' Elm Manor facility, including administering medication; bathing, dressing, and feeding patients; monitoring vital signs; and recording clinical tasks.

12.     Throughout her employment with Defendants, Sizemore was a non-exempt hourly employee and was most recently paid $20 per hour.

13.     While employed by Defendants, Sizemore was scheduled to work from 7:00 a.m. to 3:00 p.m., 5 days per week, although Sizemore arrived at work and started working between 5:30 a.m. and 6:00 a.m. every shift in order to ensure her patients received appropriate care. Specifically, Sizemore was responsible for, among other things, ensuring elderly residents were woken up and fed in the morning.  In order to do so, Sizemore was required to arrive at work between 5:30 a.m. and 6:00 a.m. to wake them up, get them ready for the day (including changing them, brushing their hair, and brushing their teeth), and feed them, all of which comprised her principal work duties.

14.     In addition to performing her principal work duties prior to the start of her scheduled shift, Sizemore's scheduled hours included an automatically deducted meal break of 30 minutes per day; however, she never received a completely uninterrupted 30-minute meal break.

15. Consistently throughout her employment, Sizemore worked at least 40 hours per week, excluding her automatically deducted meal break. By way of example, during the week of December 7, 2025 to December 13, 2025, Sizemore worked at least 40 hours not including her 30-minute automatic meal break deduction. When including her automatic meal break deduction, Sizemore worked well over 40 hours during this week. As another example, during the week of November 9, 2025 to November 15, 2025, Sizemore worked at least 40 hours not including her 30-minute automatic meal break deduction. When including her automatic meal break deduction, Sizemore worked well over 40 hours during this week. The foregoing are just two examples of weeks in which Sizemore worked over 40 hours, which occurred consistently and routinely throughout her employment.

16. As further set forth herein, Sizemore routinely worked before and/or after her scheduled shifts and during her uncompensated meal breaks, but was not properly compensated for all hours worked, including overtime at the applicable rate of one and one-half times her regular hourly rate.

17. As a CNA, Sizemore could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which she worked. Sizemore could not hire or fire other Hourly Employees. She also could not pick and choose a particular job assignment during any given day, but rather was assigned particular job assignments by her supervisors. Despite this lack of independent discretion, throughout the entirety of her employment, Sizemore was not properly compensated for all hours worked.

18. As a result of Defendants' improper timekeeping practices and policies, on most days throughout her employment, Plaintiff performed essential work after clocking in but before the start of her scheduled shift, for which she was not paid. Indeed, Sizemore routinely clocked in

to work 1 to 1 ½ hours prior to the start of her scheduled shift and immediately began performing her job-related duties, but she was not compensated for this pre-shift work, either due to Defendants' improper time rounding, schedule-based pay practices, or manipulation of Sizemore's time entries.

19.    Similarly, Sizemore routinely performed essential work for Defendants after the end of her scheduled shift, but was not compensated for this time.  To wit, routinely throughout her employment, Sizemore would clock out between 15 to 30 minutes after the end of her scheduled shift and would perform work during this post-shift interval. However, she was not compensated for this post-shift work, either due to Defendants' improper time rounding, schedule-based pay practices, or manipulation of Sizemore's time entries.

20.    As such, on these days, Sizemore worked but was not compensated for *at least* 1 hour and 15 minutes as a result of Defendants' improper timekeeping practices and procedures.

21.    By way of example, during the week of November 9, 2025 to November 15, 2025, Sizemore clocked in before the start of her scheduled shift and/or after the end of her scheduled shift every single day during this week, but was undercompensated as a result of Defendants' unlawful timekeeping practices.  While Sizemore sometimes received overtime compensation, she did not receive the correct amount of overtime compensation when she worked more than 40 hours in a week because of Defendants' time rounding, scheduled based pay, or manipulation of her time entries.

22.    Sizemore was engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift periods in which she was clocked in but not compensated.  Work performed during the pre- and post-shift periods include some or all the job duties referenced *supra*.  This pre- and post-shift work was significant, integral, and indispensable

to the performance of Sizemore's job duties, was not a *de minimis* task or request, and was predominantly for Defendants' benefit.

23.    Additionally, Sizemore worked during all or portions of her uncompensated meals breaks every single shift, but was not compensated for any of this time worked.  Work performed during interrupted and uncompensated meal breaks includes those duties described *supra*.

24.    By way of example, during the week of November 9, 2025 to November 15, 2025, Sizemore worked during all or portions of her uncompensated meal breaks each and every shift. Defendants, however, improperly deducted the entirety of Sizemore's meal break from her compensation, despite knowing that Sizemore performed work during her meal break.  As a result, during these weeks, just like all others, Sizemore worked additional hours, including hours in excess of 40 hours in a week, but was not paid any additional straight or overtime for these additional hours of work.

25.    Sizemore's supervisors knew she was performing work prior to and after the end of her scheduled shifts during uncompensated meal breaks, but did nothing to rectify the situation or compensate Sizemore for her time.  Supervisors with knowledge of Sizemore's uncompensated work includes David Weinstein.

26.    Sizemore does not possess true and accurate copies of her time entries, which are in Defendants' custody, possession or control and which will be sought in discovery. Nevertheless, as a result of Defendants' improper timekeeping practices, including Defendants' improper automatic meal break deduction practices, Sizemore estimates that she was deprived of 6 to 8 hours of uncompensated straight and/or overtime *per week* throughout her employment.

27.    Plaintiff Conde is a resident of Rochester, New York, and is a current Hourly Employee of Defendants. Conde was hired by Defendants in or around March 2025 as a Registered

Nurse ("RN") at the Elm Manor facility and has been a full-time non-exempt hourly employee of Defendants throughout her employment.

28.     As an RN, Conde's job responsibilities include, among other things, providing direct care patient, assessing health needs, developing and implementing nursing care plans, administering medications, operating medical equipment, managing patient records, and coordinating care with physicians and other staff to ensure high-quality patient outcomes.  Conde's current hourly rate is $50.00 per hour.

29.     Conde is scheduled to work 5 shifts per week, and each shift is at least 8 hours long.  Specifically, Conde works a double shift every Saturday and Sunday (*i.e.*, a shift from 7AM to 3PM and then again from 3PM to 11PM), as well an ordinary 8-hour shift on Thursdays from 7AM to 3PM.  Thus, Conde is scheduled to work at least 40 hours per week, although she worked in excess of 40 hours per week routinely throughout her employment.

30.     However, nearly every single day throughout her employment, Conde clocked in approximately 10 to 15 minutes prior to the start of her scheduled shift and immediately began performing her job functions.  Likewise, nearly every single day, Conde clocks out approximately 10 to 15 minutes after the end of her scheduled shift during which time she is performing her principal job functions, including updating the incoming RNs about the patients and their status.  Despite performing work for Defendants during this pre- and post-shift time, Defendants systematically fail to compensate Conde for this time worked.  As such, Conde routinely works 20 to 30 minutes each shift for which she is not compensated.

31.     Additionally, Conde's scheduled hours include an automatically deducted meal break of 30 minutes per day.  Throughout her employment, Conde estimates that she works during some or all of her uncompensated meal breaks approximately 3 shifts per week.  Conde, however,

is not compensated for working during her uncompensated meal breaks.  Instead, Defendants automatically deduct 30 minutes from every single shift she works.

32.    As an RN, Conde cannot exercise independent discretion, judgment or control over the daily and overall operation of the areas in which she worked.  She cannot hire or fire other Hourly Employees, and cannot pick and choose a particular job assignment during any given day, but rather is assigned particular job assignments by her supervisors.  Despite this lack of independent discretion, throughout the entirety of her employment, Conde has not been properly compensated for all hours worked.

33.    Conde is engaged in essential and integral work on Defendants' behalf during the pre- and post-shift periods in which she was clocked in but not compensated, as well as during her uncompensated meal breaks.  Work performed during the pre- and post-shift periods include some or all the job duties referenced *supra*.  This pre- and post-shift work is significant, integral, and indispensable to the performance of Conde's job duties, is not a *de minimis* task or request, and is predominantly for Defendants' benefit.

34.    Conde's supervisors knew she was performing work prior to and after the end of her scheduled shifts during uncompensated meal breaks, but did nothing to rectify the situation or compensate Conde for her time.

35.    As a result of Defendants' unlawful timekeeping practices, including Defendants' improper automatic meal break deduction practices, Conde is deprived of wages as required by the FLSA and NYLL, including at least 2 to 4 hours of uncompensated straight and/or overtime per week.

36.    Plaintiff Johnson is a resident of Rushville, New York, and is a current Hourly Employee of Defendants. Johnson was hired by Defendants in or around February 2025 as a CNA

at the Elm Manor facility and has been a full-time non-exempt hourly employee of Defendants throughout her employment.

37.    Like Sizemore, Conde, and the other Hourly Employees, Johnson routinely worked before and/or after her scheduled shifts and during her uncompensated meal breaks, but was not properly compensated for all hours worked, including overtime at the applicable rate of one and one-half times her regular hourly rate.

38.    As a CNA, Johnson's job responsibilities include, among other things, providing direct and hands-on healthcare services to patients at Defendants' Elm Manor facility, including bathing, dressing, and feeding patients; monitoring vital signs; and recording clinical tasks. Johnson's current hourly rate is $21 per hour.

39.    When Johnson was initially hired and up through December 2025, she worked Monday, Wednesday, Friday, Saturday, and Sunday, and regularly worked 40 hours or more per week.  During this time, Johnson would work from 8:30AM to 3:00PM, and then return to the Elm Manor facility at approximately 4:00PM and continue working, oftentimes until 9:00PM or later, particularly when the facility was short-staffed and the relieving employee failed to show up or did not show up on time.   For the shifts she worked on the weekends, she would regularly arrive at work and begin performing her principal work duties at 7:00AM, but was not paid for this additional time spent working prior to the start of her shift.

40.    Since January 2026, Johnson has been scheduled to work the overnight shift on Thursday and Friday, and once per month she is scheduled to work Saturday and Sunday.  Just like before, when she works the weekend shift, she arrives at work at 7:00AM and begins working immediately, but is not paid for this additional time worked.

41.     Throughout her employment, regardless of which shift she works, Johnson's scheduled hours include an automatically deducted meal break of 30 minutes per day, although she often does not receive an uncompensated meal break.  Between when she was fired hired through December 2025, Johnson estimates that she worked during her uncompensated meal break approximately 75% of the time.  Since January 2026, while working the overnight shift, Johnson never receives an uncompensated meal break.

42.     At least five times throughout her employment, Johnson submitted documentation reflecting that she did not receive an uncompensated meal break, but she still was not paid for this time.  As a result, Johnson stopped submitting this documentation, despite having to continue to work during her meal break without pay.

43.     As a CNA, Johnson cannot exercise independent discretion, judgment or control over the daily and overall operation of the areas in which she worked.  She cannot hire or fire other Hourly Employees, and cannot pick and choose a particular job assignment during any given day, but rather is assigned particular job assignments by her supervisors.  Despite this lack of independent discretion, throughout the entirety of her employment, Conde has not been properly compensated for all hours worked.

44.     Johnson does not possess true and accurate copies of her time entries, which are in Defendants' custody, possession or control and which will be sought in discovery. Based on her recollection and best estimate, as a result of Defendants' unlawful time practices and policies, Johnson believes that from February 2025 through December 2025, she worked at least 3 to 5 hours each week on the clock for which she was not paid, and since January 2026, she estimates that she worked at least 1 to 2 hours per week for which she is not paid.

45. Johnson's supervisors knew she was performing work prior to and after the end of her scheduled shifts during uncompensated meal breaks, but did nothing to rectify the situation or compensate Johnson for her time.

46. Johnson is engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift periods in which she was clocked in but not compensated. Work performed during the pre- and post-shift periods include some or all the job duties referenced *supra*. This pre- and post-shift work is significant, integral, and indispensable to the performance of Johnson's job duties, is not a *de minimis* task or request, and is predominantly for Defendants' benefit.

47. Other Hourly Employees—regardless of job title, duties, or responsibilities—were likewise required to track the hours they worked for Defendants, either through time clocks identical to those used by Bell or through hard copy sign-in sheets. Just like Plaintiff, other Hourly Employees were not compensated for all hours worked as a result of Defendants' improper timekeeping practices and policies.

**<u>Defendants</u>**

48. Defendant Calvado Care is a domestic limited liability company, organized and existing in the State of New York, with its principal place of business located in Brooklyn, New York. According to its website, Calvado Care provides a "wide array of holistic wellness programs" through its three facilities: Elm Manor, The Brook at High Falls, and Wedgewood Rehab & Nursing Center.

49. Calvado Care's website unambiguously advertises itself as the owner and controlling entity of each of the Facilities, including congratulating "all three facilities for their outstanding improvements in Quality Measures (QMs) and star ratings!"

50.     Under the "Facilities" section of Calvado Care's website, Calvado Care advertises each of the Facilities using the same logo, branding, and font:



51.     Defendant Elm Manor is a nursing and rehabilitation center located in Canandaigua, New York, and operates under the direction and control of Calvado Care.  The portion of the Calcado Care website dedicated to its Elm Manor facility touts Defendants' welcoming community, and invites visitors to "Experience the Calvado Care Difference."

52.     Each of Sizemore, Conte, and Johnson worked for Defendants at the Elm Manor facility and were subject to the same timekeeping practices and policies, which resulted in the systematic failure to compensate Plaintiffs for all hours worked.

53.     As further set forth herein, Calvado Care is also the employer of the Hourly Employees at Wedgewood Rehab & Nursing Center and The Brook at High Falls facility, and employs the same unlawful timekeeping practices and policies at those facilities that are employed at the Elm Manor facility.

54.     The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  As such, Defendants had the power to control wage policies and practices through their oversight of day-to-day operating procedures; control Hourly Employees' work schedules; determine Hourly Employees' rate of pay; hire and fire Hourly Employees; control record-keeping practices of Defendants' various facilities, including maintaining Hourly Employees' records. Thus, Defendants are the joint employers of Plaintiffs and class members within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

### Background

55.     Defendants employ over 100 Hourly Employees at the various Facilities.

56.     Defendants hired Plaintiffs and all other Hourly Employees and promised to pay hourly wages for all hours worked.  Hourly Employees are paid hourly wages based upon their job description and tenure that range between approximately $20.00 per hour and $50.00, and have a standard workweek of 40 hours, with a 30-minute automatic meal break deduction each shift.

57.     Hourly Employees are required to record the hours they work for Defendants by utilizing a time clock.  Defendants' pay policies and practices are the same across all departments and all Facilities, and the time-keeping systems used within each department and each Facility are the same as to all Hourly Employees within each department and are the same or substantially similar across all departments.

### Defendants' Timekeeping System Improperly Penalizes Hourly Employees When They Clock in Before the Beginning of their Shift and/or After the end of their Shift

58.     Defendants have a policy and practice of unlawfully penalizing Hourly Employees who clock in and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they clock out.

59.    Specifically, Defendants' timekeeping system is configured in such a way, or Defendants manipulate Hourly Employees' time entries in such a way, that artificially reduces the amount of time Hourly Employees are credited with having worked, even though Hourly Employees are performing their principal job duties between when they have actually clocked in/out and when they are scheduled to work.

60.    The work performed by Hourly Employees during these periods are at the request of managers, supervisors, directors, and other superiors who know that Hourly Employees are not be paid for this time, but nonetheless instruct Hourly Employees to begin or complete tasks within the unpaid pre- and post-shift window.

61.    Despite requesting and being aware of the work Hourly Employees perform prior to and after their scheduled shifts, Defendants have knowingly configured their time-keeping system or otherwise manipulate the time entries of Hourly Employees to deny compensating Hourly Employees for some – if not all – of this unlawful time spent on Defendants' behalf by systematically rounding down the total time worked by Hourly Employees.

62.    "Rounding" practices are permissible under the FLSA and NYLL if the "arrangement averages out so that the Hourly Employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). This practice is accepted provided that the time rounding is used in such a manner that will not, over a period of time, result in the failure to compensate Hourly Employees properly for all the time they have actually worked. Defendants are aware of permissible rounding practices under the FLSA and NYLL.  However, Defendants timekeeping system disproportionately works to the benefit of Defendants and to the detriment of Hourly Employees, by artificially reducing the total time Hourly Employees are credited with working at Defendants' Facilities.

**Hourly Employees Routinely Work During Uncompensated Meal Breaks**

63.    In addition to impermissibly failing to compensate Hourly Employees for work performed before and/or after their scheduled shifts, Defendants also automatically deduct 30 minutes each day from Hourly Employees' compensation for a meal break, despite knowing that Hourly Employees routinely work during all or portions of their uncompensated breaks.

64.    Defendants' practice of automatically deducting meal breaks from Hourly Employees' compensation is uniform throughout Defendants' Facilities and departments and applies regardless of the Hourly Employee's job title, duties, or responsibilities.

**Defendants Failed to Provide Hourly Employees with Timely and Appropriate Wage Statements and Pay Rate Acknowledgement Forms as Required under NYLL**

65.    Defendants failed to provide Plaintiffs and Hourly Employees with accurate wage statements at the time of payment of wages, which were required to contain: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL § 195.3.

66.    Specifically, the wage statements provided to Plaintiffs were inaccurate and incomplete by failing to include, among other things, the correct rates of pay for all hours worked by Plaintiffs.

67.    Additionally, Defendants failed to provide Plaintiffs and Hourly Employees with appropriate pay rate acknowledgement forms at the commencement of employment containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195.1.

68.    As a result, Plaintiffs were prejudiced and harmed in their ability to ascertain whether they were, in fact, being paid for all hours worked, resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants for years.

**Defendants Exercise Control Over the Wage Policies and Practices of Hourly Employees at the Facilities, Operate the Facilities as an Integrated Enterprise, and are Joint Employers of the Hourly Employees**

69.    Defendant Calvado Care operates Elm Manor and the other Facilities as an integrated enterprise and is a joint employer of the Hourly Employees.

70.    Calvado Care has the power to control the wage policies and practices of the Hourly Employees through its oversight and management of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control the record and timekeeping practices at each of the Facilities.

71.    Moreover, Calvado Care holds itself out to the public as the owner and controlling entity of each of the Facilities.  For example, the Calvado Care website specifically advertises each of the Facilities as the "Calvado Care Facilities" (*see* https://calvadocare.com/facilities/), and inviting prospective clients to "Experience the Calvado Care Difference."  The main landing page of the Calvado Care website further confirms that each of the Facilities are under its operation and control, issuing a "Congratulations to all three facilities for their outstanding improvements in Quality Measures (QMs) and star ratings!" *See* https://calvadocare.com/.

72. Moreover, each of the Facilities use the same Calvado Care logo, font, color, and branding, and Calvado Care repeatedly refers to the staff at each of the Facilities as "our" staff.

73. Calvado Care maintains operational and direct control over the Hourly Employees at the Facilities, including controlling significant functions of the business, determining Hourly Employees' rates of pay, making hiring and firing decisions, supervising and controlling Hourly Employees work schedules and conditions of employment, and maintaining employment records for such Employees. The Facilities share common management, common ownership and financial control, and are interrelated.

74. Accordingly, by virtue of their positions, roles and conduct as described above, Defendants are "employers" of Plaintiff and the Hourly Employees under the FLSA and NYLL and operate the Facilities as an integrated enterprise.

**The Proposed Class**

75. Plaintiffs seek certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and were not properly compensated for all work performed while clocked-in; and/or were not compensated for all work performed during uncompensated and automatically deducted meal breaks; and/or were not fully compensated for time worked over forty hours per week at overtime rates; and/or did not receive timely and accurate wage statements and wage notices.

**FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS**

76. The preceding paragraphs are incorporated by reference as if fully set forth herein.

77. Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Class.

4905-0005-2635, v. 1                                   18

78.     Excluded from the FLSA Collective Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Colvado Care, Elm Manor, or the remaining Facilities.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

79.     Plaintiffs are unable to state the exact number of Hourly Employees within the Collective Class without discovery of Defendants' books and records but estimates that the FLSA Collective Class exceeds 200 individuals.

80.     Defendants improperly benefited from Plaintiffs and the FLSA Collective Class members' uncompensated work during schedule-based and time rounding periods and uncompensated meal breaks.

81.     Defendants' unlawful conduct has been widespread, repeated, and consistent.  Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiffs and the FLSA Collective Class.

82.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class.  There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

**NEW YORK CLASS ACTION ALLEGATIONS**

83.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

84.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

85.     Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Colvado Care, Elm Manor, or the remaining Facilities.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

86.     Defendants currently employ over 100 Hourly Employees, and they systematically fail and refuse to pay their Hourly Employees for all compensable hours worked.  The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

87.     Plaintiffs' claims are typical of the claims of other New York Class members because Plaintiffs are current and former Hourly Employees who have not been compensated for work performed at their employers' request as a result of Defendants' uniform timekeeping system and during uncompensated meal breaks.

88.     Plaintiffs and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

89.     Plaintiffs and other New York Class members have been injured in that they have been uncompensated or undercompensated due to Defendants' common policies, practices, and patterns of conduct.

90.     Plaintiffs will fairly and adequately protect the interests of the New

York Class.  Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiffs and the New York Class.

91.      Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

a.      Whether Defendants failed and/or refused to pay Plaintiffs and the New York Class for all of the compensable time that they worked for Defendants while clocked-in;

b.      Whether Defendants failed and/or refused to pay Plaintiffs for time worked during uncompensated and automatically deducted meal breaks;

c.      Whether Defendants failed to keep true and accurate time records for all hours worked by their Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

d.      Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

e.      Whether Defendants correctly compensated members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

f.      Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

g.      Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiffs and New York Class members to perform work for Defendants' benefit which was not compensated;

h.      Whether Defendants' policy of failing to pay Hourly Employees was instituted willfully or with reckless disregard of the law; and

i.      The nature and extent of class-wide injury and the measure of damages for those injuries.

92.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendants' own records.

93.     Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

94.     Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiffs and the New York Class.

95.     Plaintiffs intend to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiffs and the FLSA Collective Class)

96.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

97.     At all relevant times, Defendants have been, and continue to be, "employers"

engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

98.     At all relevant times, Defendants have engaged in commerce and their commercial activities generate at least $500,000 a year.

99.     At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiffs and each of the members of the FLSA Collective Class.

100.    Plaintiffs consent in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit 1 is a copy of Plaintiffs' Opt-in forms.  As this case proceeds, it is likely that other individuals will sign consent forms and join as opt-in plaintiffs.

101.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

102.    Plaintiffs and the members of the FLSA Collective Action were and are entitled to be paid overtime compensation for all hours worked over forty hours in a workweek.

103.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the members of the FLSA Collective Class for all of their hours worked.

104.    By failing to compensate Plaintiffs and the members of the FLSA Collective Class for overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

105.    By improperly rounding FLSA Collective time entries, Defendants have violated, and continue to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

106.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA,

within the meaning of 29 U.S.C. § 255(a).

107.    Plaintiffs, on behalf of themselves and members of the FLSA Collective Class, seek damages in the amount of their overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

108.    Plaintiffs, on behalf of themselves and the FLSA Collective Class, seek recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION

**Violations of New York Labor Law –
Nonpayment of Minimum Wages and Straight Wages
§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2
(On Behalf of Plaintiffs and the New York Class)**

109.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

110.    Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the minimum wages and straight wages as set forth in the preceding paragraphs of this Complaint to Plaintiffs and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

111.    Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiffs' and the New York Class members' wages that concern this lawsuit.

112.    Defendants were not authorized by Plaintiffs or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

113.    Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid,

and court costs and attorneys' fees incurred in recovering the unpaid wages.

114.    Defendants have violated the New York Labor Law by failing to pay Plaintiffs and the members of the New York Class for all compensable time and by failing to pay Plaintiffs and the members of the New York Class for the straight time worked at the established rate.

115.    Plaintiffs, on behalf of themselves and the New York Class, seek the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

116.    Plaintiffs, on behalf of themselves and the New York Class, seek all liquidated damages and punitive damages and penalties available under the NYLL.

### THIRD CAUSE OF ACTION

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiffs and the New York Class)**

117.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

118.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiffs and the members of the New York Class.

119.    Defendants have failed to pay Plaintiffs and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

120.    By Defendants' knowing and/or intentional failure to pay Plaintiffs and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

121.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

122.    Plaintiffs, on behalf of themselves and the New York Class, seek all liquidated and punitive damages and penalties available under the NYLL.

**FOURTH CAUSE OF ACTION**

**New York Labor Law – Violation of the Notice and Recordkeeping Requirements and Wage Statement Provisions
(On Behalf of Plaintiffs and the New York Class)**

123.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

124.    Defendants have failed to provide Plaintiffs and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195(1).

125.    Defendants have not provided Plaintiffs and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the

number of regular hours worked, and the number of overtime hours worked, as required by NYLL § 195(3).

126. As a result of the foregoing, Plaintiffs were prejudiced and harmed in their ability to ascertain whether they were, in fact, being paid for all hours worked, resulting in Plaintiffs and Hourly Employees being undercompensated by Defendants for years.

127. Defendants are liable to Plaintiffs and each Hourly Employee in the amount of $5,000 for violation of NYLL § 195(1) and $5,000 for violation of NYLL § 195(3), together with costs and attorneys' fees.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs Nicole Sizemore, Elsie Conde, and Brooke Johnson, on behalf of themselves and on behalf of the FLSA Collective, seek the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Opt-in Consent Forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiffs Nicole Sizemore, Elsie Conde, and Brooke Johnson as the Representatives of the FLSA Collective Class;

C. Appointment of Plaintiffs' counsel as Lead Counsel for the FLSA Collective Class;

D. An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by Defendants;

E. An award of costs incurred herein, including expert fees;

F. An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.      An award of pre-judgment and post judgment interest, as provided by law;

H.      An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiffs Nicole Sizemore, Elsie Conde, and Brooke Johnson, on behalf of themselves and the New York Class, seeks the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiffs' counsel as Class Counsel for the New York Class;

B.      Designation of Plaintiffs Nicole Sizemore, Elsie Conde, and Brooke Johnson as the Representatives of the New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Minimum Wages and Straight Wages):

1.   An award to Plaintiffs and members of the New York Class of damages for the amount of unpaid minimum and/or straight wages in addition to interest subject to proof;

2.   An award to Plaintiffs and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

1.   An award to Plaintiffs and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

2.   An award to Plaintiffs and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth Cause of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

1.      An award to Plaintiffs and the members of the New York Class for damages for violation of the NYLL notice and recordkeeping provisions.

2.      An award to Plaintiffs and the members of the New York Class for reasonable attorneys' fees and costs.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

### DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in in any way to Plaintiffs and Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, Instagram, WhatsApp, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

### NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, Plaintiffs, the FLSA Collective Class, and the New York Class intend to charge and hold personally, jointly and severally liable, the ten largest shareholders of Defendants for all debts, wages, and/or salaries due and owing to Defendants' employees for

services performed by them and Plaintiffs have expressly authorized the undersigned, as their

attorney, to make this demand on their behalf.

Dated: New York, New York
         March 27, 2026

McLAUGHLIN & STERN, LLP

By: */s/ Jason S. Giaimo*
         Jason S. Giaimo
         Brett R. Gallaway
         Lee S. Shalov
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
jgiaimo@mclaughlinstern.com
bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com
*Attorneys for Plaintiffs and the Proposed Class*

4905-0005-2635, v. 1                              30